## Case No. 1,324.

### BENNETT v. SHERMAN.

[3 Law Rep. 181.]

District Court, D. Massachusetts. June Term, 1840.

#### SEAMAN—PUNISHMENT BY MASTER.

Case of a libel by a seaman on board of a whaling ship, against the captain for an assault, in causing him to be seized up and flogged. The court refused, under the circumstances of the case, to make a decree of damages in favor of the libellant.

In admiralty. This was the case of a libel for an assault. The libellant was a seaman on board the ship Mount Vernon, of New Bedford, of which E. S. Sherman was master, in a whaling voyage, commencing in November, 1837, and which was finished by the arrival of said ship, at New Bedford, in the month of March last. The libellant alleged, that in the month of May, 1838, on the high seas, while he was in the forecastle, at dinner time, one of the crew, James Rayner found fault with some of the food, "as not being fit for a man to eat," but put it into the libellant's dish, who then said, "You say yourself, that this is not fit for a man to eat; why do you put it into my dish?" That thereupon, one John Collins, one of the seamen of the ship said, "it was good enough for a Frenchman," and then spit in the libellant's face several times, calling him a damned Frenchman, with other opprobrious expressions; and coming behind the libellant, seized him by the throat, thereby causing an effusion of blood from his throat and nostrils. That the libellant went and complained to Captain Sherman of the maltreatment and abuse that he had received, who ordered the mate to seize the libellant up; that notwithstanding the libellant's remonstrances, Sherman insisted upon the execution of his orders; that the libellant was accordingly seized up to the mizzen rigging, and that the said Sherman, then and there inflicted upon his back and neck, about two dozen lashes, with nine-yarn rattling stuff, doubled, so as to make four parts or strands, for no cause whatever; by which he suffered extreme pain; and for which he claimed damages in the sum of 100 dollars.

The respondent, in his answer, alleged, that on the first day after leaving New Bedford, on the voyage, he called all hands aft, and announced to them (the libellant being present and hearing the same) the rules and regulations, which he should require to be observed, for the maintenance of proper discipline on board said ship and to promote the objects of the voyage; and, among other requirements, distinctly stated, that there must be no quarreling or fighting on board the ship, and that a disobedience of that order would be severely punished; that this order, so important for the safety of the ship, and success of the voyage, was repeatedly promulgated to the crew prior to the day in which the transaction stated by the libellant, occurred, and was peculiarly requisite, in relation to that ship and voyage, as the crew consisted of a large number of persons, strangers to each other, and to the officers, and of whose characters the officers had and could have no knowledge previous to the commencement of the voyage. That two of the crew having disobeyed that order, they were seized up in the usual manner for punishment, and the whole crew were called aft, the said Bennett among them, to witness the correction. But it being the first offence, and hoping for a beneficial effect from mild and gentle treatment, he remitted the threatened punishment on that occasion, ordering the men to their duty, and distinctly stating to Bennett and the rest of the crew, that for the next similar invasion of that order, he should certainly punish the offenders. That in the instance in reference to which the libellant complained, the said Bennett came upon deck with his face scratched, and bloody, and complained to the respondent, that John Collins had been fighting him; representing, that he (the said libellant,) had not been at all to blame. Whereupon said Collins was ordered aft, and the whole crew were summoned to witness his punishment; that the said Collins was then, "in the presence of the crew, seized up, and corrected in a proper manner;" that it was then stated to the respondent, by several of the crew, that said Bennett was more to blame than the said Collins, that he had dared the said Collins out to fight, and commenced the affray, that thereupon the respondent made particular and deliberate inquiry of the crew individually, who witnessed the quarrel, and they severally, and without exception, informed him, that Bennett commenced the fight, and was most deserving of punishment; that thereupon, he ordered him to be seized up, and in the presence of the crew, administered to him a mild and proper correction, giving him not exceeding eight blows, on his back; the said Bennett then having on a pair of woollen trowsers, a woollen jacket, and woollen shirt; the instrument used being made of seizing stuff, consisting of four tails. That this was the whole extent of the punishment received by said Bennett; that no blood was let, and no marks made upon his person. That his clothes were not taken off, or let down; and that he made no complaint of the punishment. The respondent concluded, by emphatic averment, that his treatment of said Bennett, and of all the ship's company, during the whole of the voyage, was kind and paternal, without any infliction of punishment in a state of angry feeling, and never for any other purpose than for the preservation of discipline, and such as was necessary to secure the welfare and comfort of his ship's company, and the safety of the property committed to his charge, and that from interchange between

himself and the libellant, after the said punishment, during said voyage, and since their return to New Bedford, he has good cause to believe, and does believe that this prosecution has been stimulated by some other person, and not upon the motion of said Bennett himself. The evidence in the case, was from the testimony of Samuel Farmer, one of the crew, produced on the part of the libellant; and for the respondent, the deposition of Humphrey A. Shelley, the mate, and the testimony of George A. Coville, boat steerer, David Miller, second mate, and Joseph Enos, boat steerer, witnesses examined on the stand.

Samuel Farmer, the witness, produced on the part of the libellant, had his berth in the steerage, and was not with the men in the forecastle, and his testimony respecting the affray, was altogether derived from what was related by the libellant, when he made his complaint to Captain Sherman, and from what was said by Collins when called up for punishment. His repetition of what was stated by the libellant, on that occasion, corresponded in the main with the statement in the libel, with this addition, that to Collins's reproachful remark, the libellant replied that a Frenchman was as good as he; and that immediately thereupon, the libellant was seized by the throat by Collins, and severely handled, as stated in the libel. He further testified, that when the respondent's determination to chastise the libellant was announced, the mate, Mr. Shelley, interposed in his behalf, and said he ought not to be flogged, adding, that Collins was an impudent, saucy fellow, a man who would impose on a Frenchman. J. Collins, he says, received four dozen blows, and the libellant, two dozen, inflicted by the captain, with all his strength; and that said libellant's clothing, when he received the blows, was a cotton shirt and trowsers, without a jacket. The mate's deposition sustained the captain's statement. He contradicted the testimony of Farmer, representing him as expressing to Captain Sherman, that the libellant was innocent, and Collins the sole offender in the affray. After the punishment of Collins, Captain Sherman, he says, was going to let Bennett go unpunished; "but all the crew, and those that saw the fight, in the forecastle, said, that Bennett was most to blame, and ought to be flogged." That, thereupon, Bennett was seized up, and received from the captain, six or eight blows, with a piece of worming stuff about twice as large as a cod line. George A. Coville, (boat steerer,) confirmed the mate's statement as to the circumstances relative to the punishment inflicted by Captain Sherman, on those two men. Collins, he said, received twenty-four blows, and Bennett, seven or eight. With this, the testimony of Miller, second mate, corresponded. These two witnesses, and also, Enos, (a boat steerer,) all confirmed the mate's testimony, as to the declaration made by the

crew, when it appeared that the captain was about to dismiss the libellant, unpunished. There was a collision of testimony in three particulars. The opinion said to have been pronounced by the mate, of the libellant's entire innocence. The number of blows received by the libellant, and his clothing, at the time. In regard to the first particular, it was mentioned only by Farmer; and Miller said, that he and the mate stood together, at the time, and that no such objection was made by that officer, to the punishment of Bennett, and it was expressly and repeatedly denied by the mate, when closely questioned on that point. As to the number of blows, the libellant alleged, that he received two dozen; so said Farmer. In this they are contradicted by four witnesses, all present on that occasion. As to the libellant's clothing, at the time, it was not described in his statement. Farmer said, that he had on a cotton shirt and trowsers. All the other witnesses agreed that he was clothed in a woolen shirt and trowsers, or pantaloons. One only, Miller, mentioned a jacket in addition.

The case was argued on the evidence by E. Bassett for the libellant, and by Clifford for the respondent.

DAVIS, District Judge. If it were necessary for a satisfactory decision in this case, to ascertain, precisely, in what particular, and in what manner, or degree the libellant was to blame, in the affray at dinner, in the forecastle, I should find it difficult to come to a conclusion. It altogether rests on the libellant's declarations; none of the men, who were in the forecastle at said time, are produced as witnesses. My inference from all that appears in the case, is, that the impression under which Captain Sherman proceeded, when he commenced the punishment of Collins, was reasonable and discreet. Of the severity of that punishment, it would be out of place, in this case, to express an opinion. It is sufficient to say, that I conclude from the degree of that punishment, that Captain Sherman proceeded with a persuasion that Collins was the sole offender, and that Bennett should go unpunished. He was led to depart from that favorable consideration, in reference to Bennett, by the united declarations of the men who were called to witness the punishment. Influenced by these declarations, and, as there is reason to believe, purely influenced by considerations of prudent regard to the maintenance of peace and quietness among the ship's crew, and the advancement of the interests entrusted to his care and direction, he inflicted punishment on the libellant not with severity, not exceeding eight blows, and with an instrument which has been exhibited, and the manner of using it described; and which I cannot pronounce an unlawful or improper one, for occasions requiring chastisement on board a ship at sea. It was said in the argument for

the libellant, that Captain Sherman should not have so suddenly reversed his favorable determination, respecting Bennett, by those declarations made by the crew. His decision does not appear to have been made immediately on the general expression of the crew, that the libellant was in fault. He avers that he made deliberate and particular inquiry of the crew, individually, who witnessed the quarrel. This is corroborated by the mate's testimony, who . mentions the names of four or five of the men, who declared that the libellant was to blame, in the affray. It was argued that the punishment should have been suspended until the facts of the case were more particularly and deliberately inquired into. I should doubt, whether any action in reference to the libellant's culpability, would have been less severe, if founded on such examination. It is not probable that those men would have retracted the declaration which they had made, in the presence of the whole ship's company, officers and crew. Captain Sherman's prompt decision on the subject, his motives being just and laudable, should not, I think, under the circumstances of the case, be visited with a decree of damages. Besides the declaration of the crew, which it would have been imprudent and unsafe, entirely to disregard, he might very properly consider, that in such affrays, it is seldom that either of the parties is entirely free from fault, and that among a ship's company, it is not an usual thing, or to be expected, that men should insist on corporal punishment of one of their number. Captain Sherman's situation was perplexing, and if, in his decision, he made a mistake, it was not in anger, from ill will, or any unworthy disposition or motives in reference to the libellant. The punishment was slight in the number of blows, and as appears probable in the degree of force which was applied. A different course, considering the united representations of the crew, who witnessed the affray, and with disregard to their declarations, might have occasioned deep umbrage, and have been disastrous or injurious to the voyage.

The closing allegation, or expression of belief in the respondent's answer, has no influence in the decision, and had better have been omitted. Seamen, when beaten or injured, or supposing themselves injured by an officer, frequently utter expressions of deep resentment, and threaten what they will do at home, when the voyage shall be finished. All this is of no use, and does not improve their condition. Bennett's deportment and actions on the subject, after the usage of which he now complains, should not be interpreted to his disadvantage. As to the supposed instigation of a suit, suggested not to have been originally intended by the libellant, it is a common remark in such cases, sometimes suggested in argument, at the hearing, but seldom, if ever, included in the answer. The court might be misled,

and engage in a useless inquiry, by entering into an examination of the truth of such suggestions. Extraneous influences, producing suits of this description, are often imagined, and sometimes doubtless, existing, may be the effect of generous sympathy, and, in the official organs, should be viewed, as a portion of decided duty in their profession.